*PLAINTIFF:*
Percy Newby, TRUSTEE
PMB #308
C/o 17719 Pacific Ave. S.
Spanaway
Washington

# District Court of the United States
## For the District of Columbia

**Percy Newby,** TRUSTEE
      PLAINTIFF

No.

**05-cv-01800 RMC**

VS.

**PLAINTIFF'S OBJECTION TO DEFENDANT'S 2ND MOTION FOR TIME**

**DEPARTMENT OF TRANSPORTATION;** et al.
      DEFENDANTS

**PLAINTIFF'S CERTIFICATE OF DEFAULT AND MOTION FOR ENTRY OF DEFAULT**

*SERVICE*

**COMES NOW THE PLAINTIFF to object to the "DEFENDANT'S MOTION FOR AN EXTENSION OF TIME" filed on 12/29/2005, Docket # 8 based upon the following:**

### TESTIMONY IN SUPPORT:

*Pierce county*          )
                           )      *DECLARATION*
*Washington state*      )
*Declarant states that Declarant is competent to be a witness and that the facts alleged in the instrument to which this verification is affixed are true and correct to*

RECEIVED

JAN 6 – 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

the best of Declarant's first hand knowledge and belief under penalty of perjury pursuant to the law of *The People of the State of Washington*.

*Percy Newby, Declarant*

January 5, 2006

*Date*

~ ~ ~ ~ ~

Pierce county            )

                         )    *DECLARATION*

Washington state         )

Declarant states that Declarant is competent to be a witness and that the facts alleged in the instrument to which this verification is affixed are true and correct to the best of Declarant's first hand knowledge and belief under penalty of perjury pursuant to the law of *The People of the State of Washington*.

*Kenneth Wayne, Declarant*

January 5, 2006

*Date*

~ ~ ~ ~ ~

## OBJECTION:

1.  Defendant's motion for an extension of time (MOTION) is not supported by testimony, or any other evidence of facts appearing upon the record upon which relief could be granted.

2.  Defendant's counsel stipulates that said counsel does not have standing to represent the Defendant whose interests counsel asserts are those counsel wishes to protect.

3.  Assuming arguendo that counsel(s) could

supplement the MOTION with testimony as to the purported facts referenced in the MOTION:

a.    The courts have determined that those who write the law (statutes and implementing regulations) contemplate the usual and ordinary considerations and functions that must be accomplished by a party to comply with the requirements of law.  SEE ATTACHMENT "B".

b.    Counsel(s) cite Federal Rules of Civil Procedure (FRCP) 6(b) as authority for seeking the court's order granting additional time. FRCP grants limited discretion to the court to grant time "for cause shown."

c.    Even if we disregard that there is no testimony or evidence presented to the record as to any "cause" purported to be shown, Counsel(s) have not presented any outstanding "cause" for an extension of time that could not have been contemplated by the legislative authority establishing the time in which a party is required to appear and answer a civil complaint:

A) The alleged "fact" that Plaintiff's action "appears to make a *BIVENS* claim" is not "cause," by statute or otherwise upon which additional time may be granted.

B) Counsels allege no basis upon which the procedures of 28 CFR §50.15 could not have been completed in a timely manner, and does

not even provide any evidence that the procedure(s) required have been implemented, provides no evidence as to whether or not the responding authority has initiated any action relating to the issue, provides no evidence that the responding authority has not already acted on the necessary request(s) and denied representation by failure to affirmatively approve representation as provided by the underlying statute (no testimony or allegation of any attempt to complete procedure timely and any "cause" it was not completed timely, i.e. no allegation of terrorist activities, natural disasters, or other "cause" interfering with such procedure.)

4.  Counsels assert (again without supporting testimony or evidence) that "the agency defendant is in the process of evaluating" Plaintiff's claims without explaining why the "agency defendant" has not complied with statutory and regulatory legislative acts providing time to act.

5.  The record shows that the United States Marshal served not only the Defendants, but also the Attorney General and United States Attorney's office.

6.  IT IS CLEAR THAT COUNSEL(S) HAVE FAILED TO MAKE

ANY "CAUSE" APPEAR ON THE RECORD UPON WHICH ITS
MOTION FOR TIME MAY BE GRANTED BY THE COURT.    SEE
ATTACHMENT "B".

**LAW:**

7.    28 CFR 50.15, a copy of which is attached
hereto as ATTACHMENT "A" and incorporated by this
reference, does not provide any provision
indicating that implementation of the regulation
creates any extraordinary circumstances upon which
a defendant may assert "good cause" to delay
prosecution of an action.

8.    28 USC 2403: (a) In any action, suit or
proceeding in a court of the United States to which
the United States or any agency, officer or
employee thereof is not a party, wherein the
constitutionality of any Act of Congress affecting
the public interest is drawn in question, the court
shall certify such fact to the Attorney General,
and shall permit the United States to intervene for
presentation of evidence, if evidence is otherwise
admissible in the case, and for argument on the
question of constitutionality. The United States
shall, subject to the applicable provisions of law,
have all the rights of a party and be subject to
all liabilities of a party as to court costs to the

extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

The underlying statute does not expressly or impliedly indicate any legislative intent that implementation of the statute creates any extraordinary circumstances upon which a defendant may assert "good cause" to delay prosecution of an action.

**ISSUES:**

9.    Plaintiff draws the attention of the court to the recent case where the United States' attorney's, without good cause, obstructed and delayed the courts in

10.  The courts have routinely held that congress, and other legislative authority (rule-makers), know the law and all applicable procedures necessary to implement that law.

11.  The courts have routinely held that congress, and other legislative authority (rule-makers), know what they are doing in writing, passing, and publishing applicable law, THE EXPRESS LANGUAGE OF THE LEGISLATOR CONTROLS:

> Statutory interpretation is a question of law, which the court reviews de novo.    State v.

> Keller, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001).
> When statutory language is unambiguous, the court
> will look only to that language to determine
> legislative intent.  The court cannot add words
> or clauses to an unambiguous statute when the
> Legislature has chosen not to include that
> language.  The court should assume that the
> Legislature means exactly what it says.  Delgado,
> 148 Wn.2d at 727.  Statutory language is
> unambiguous when it is not susceptible to two or
> more interpretations.
> State v. Delgado, 148 Wn.2d 723, 726, 63 P.3d 792
> (2003).

12. <u>The court must hold</u> that congress, and other legislative authority (rule-makers), knew what they were doing in making 28 USC 2403 and 28 CFR 50.15, and also when establishing the sixty (60) day answer or response /default rule.

13. <u>The court must hold</u> that congress and rule-makers, when establishing the applicable acts, 28 USC 2403 and 28 CFR 50.15, and the sixty (60) day answer or response /default rule, did not place any evidence of legislative intent that the procedures established by 28 USC 2403 and 28 CFR 50.15 created any "good cause" for delay.  IF THE LEGISLATIVE AUTHORITIES HAD INTENDED THAT THE PROCEDURES OF 28 USC 2403 and 28 CFR 50.15 WERE UNDULY BURDENSOME AND MERE IMPLEMENTATION WAS "GOOD CAUSE" FOR DELAY THEY WOULD HAVE SET FORTH THAT LEGISLATIVE INTENT IN THE LANGUAGE OF THEIR LAWMAKING.

14. To grant repeated extension of time, the court must find <u>FACTS</u> of "good cause" outside the normal procedures provided in the statutes and legislative rulemaking, i.e. if the defendants or counsel were delayed by Hurricane Katrina; if the defendants or counsel were based in offices subjected to terrorist attacks or threats resulting in evacuations; if defendants or counsel's offices were subjected to lightning, floods, tornados, fire, if Defendant Mineta were unconscious in the hospital, etc., it may establish "good cause" for delay. **<u>NO SUCH FACTS APPEAR AS A MATTER OF RECORD</u>.** <u>NO SUCH FACTS ARE EVEN ALLUDED TO BY DEFENDANTS'</u> <u>COUNSEL</u>. **<u>THERE ARE NO FACTS EVIDENCING</u>** **<u>CIRCUMSTANCES WHICH MAY BE GOOD CAUSE EVEN ALLUDED</u>** **<u>TO IN THE RECORD</u>!**

15. The grounds asserted by counsel are merely "<u>WE</u> <u>HAVE NOT DONE OUR JOB IN THE TIME ALLOWED BY LAW</u>."

16. **<u>Negligence, dereliction of duty, failure to</u>** **<u>comply with the statutes, and any other failure to</u>** **<u>perform according to law cannot be construed as</u>** **<u>"GOOD CAUSE" for anything</u>!**

**<u>CERTIFICATE OF DEFAULT</u>**

17. **DEFENDANTS HAVE NOT ANSWERED OR DEMURRED TO** **PLAINTIFF'S CLAIMS WITHIN THE TIME ALLOWED BY LAW**

**AND HAVE NOT ESTABLISHED GOOD CAUSE FOR DELAY AS A MATTER OF LAW.**

**MOTION FOR ENTRY OF DEFAULT**

18. Based upon defendants failure to answer within the time allowed by law, and that additional time allowed by the court over Plaintiff's objections, Plaintiff requests and demands the court enter the default of the Defendants to Plaintiff's complaint as a matter of record.

Percy Newby, TRUSTEE
Plaintiff

---

**SERVICE CERTIFICATE**

Declarant states that Declarant is competent to be a witness and that Declarant placed a copy of the instrument to which this certificate is affixed in the United States mail, First Class Postage prepaid addressed to each party and/or party's counsel as provided by law.

Signature _Jeanne Stocky_

Name _Jeanne Stockinger_

Date Executed _1-4-06_

---

**Attachment "A"**

**Department of Justice**                                              **§ 50.15**

Department attorneys in representing the employee, shall be determined by the agency employing the attorneys.

(4) Representation generally is not available in federal criminal proceedings. Representation may be provided to a federal employee in connection with a federal criminal proceeding only where the Attorney General or his designee determines that representation is in the interest of the United States and subject to applicable limitations of § 50.16. In determining whether representation in a federal criminal proceeding is in the interest of the United States, the Attorney General or his designee shall consider, among other factors, the relevance of any non-prosecutorial interests of the United States, the importance of the interests implicated, the Department's ability to protect those interests through other means, and the likelihood of a conflict of interest between the Department's prosecutorial and representational responsibilities. If representation is authorized, the Attorney General or his designee also may determine whether representation by Department attorneys, retention of private counsel at federal expense, or reimbursement to the employee of private counsel fees is most appropriate under the circumstances.

(5) Where representation is sought for proceedings other than federal criminal proceedings, but there appears to exist the possibility of a federal criminal investigation or indictment relating to the same subject matter, the litigating division shall contact a designated official in the Criminal, Civil Rights or Tax Division or other prosecutive authority within the Department (hereinafter "prosecuting division") to determine whether the employee is either a subject of a federal criminal investigation or a defendant in a federal criminal case. An employee is the subject of an investigation if, in addition to being circumstantially implicated by having the appropriate responsibilities at the appropriate time, there is some evidence of his specific participation in a crime.

(6) If a prosecuting division of the Department indicates that the employee is not the subject of a criminal investigation concerning the act or acts for which he seeks representation, then representation may be provided if otherwise permissible under the provisions of this section. Similarly, if the prosecuting division indicates that there is an ongoing investigation, but into a matter unrelated to that for which representation has been requested, then representation may be provided.

(7) If the prosecuting division indicates that the employee is the subject of a federal criminal investigation concerning the act or acts for which he seeks representation, the litigating division shall inform the employee that no representation by Justice Department attorneys will be provided in that federal criminal proceeding or in any related civil, congressional, or state criminal proceeding. In such a case, however, the litigating division, in its discretion, may provide a private attorney to the employee at federal expense under the procedures of § 50.16, or provide reimbursement to employees for private attorney fees incurred in connection with such related civil, congressional, or state criminal proceeding, provided no decision has been made to seek an indictment or file an information against the employee.

(8) In any case where it is determined that Department of Justice attorneys will represent a federal employee, the employee must be notified of his right to retain private counsel at his own expense. If he elects representation by Department of Justice attorneys, the employee and his agency shall be promptly informed:

(i) That in actions where the United States, any agency, or any officer thereof in his official capacity is also named as a defendant, the Department of Justice is required by law to represent the United States and/or such agency or officer and will assert all appropriate legal positions and defenses on behalf of such agency, officer and/or the United States;

(ii) That the Department of Justice will not assert any legal position or defense on behalf of any employee sued in his individual capacity which is deemed not to be in the interest of the United States;

(iii) Where appropriate, that neither the Department of Justice nor any

67

agency of the U.S. Government is obligated to pay or to indemnify the defendant employee for any judgment for money damages which may be rendered against such employee; but that, where authorized, the employee may apply for such indemnification from his employing agency upon the entry of an adverse verdict, judgment, or other monetary award;

(iv) That any appeal by Department of Justice attorneys from an adverse ruling or judgment against the employee may only be taken upon the discretionary approval of the Solicitor General, but the employee-defendant may pursue an appeal at his own expense whenever the Solicitor General declines to authorize an appeal and private counsel is not provided at federal expense under the procedures of § 50.16; and

(v) That while no conflict appears to exist at the time representation is tendered which would preclude making all arguments necessary to the adequate defense of the employee, if such conflict should arise in the future the employee will be promptly advised and steps will be taken to resolve the conflict as indicated by paragraph (a) (6), (9) and (10) of this section, and by § 50.16.

(9) If a determination not to provide representation is made, the litigating division shall inform the agency and/or the employee of the determination.

(10) If conflicts exist between the legal and factual positions of various employees in the same case which make it inappropriate for a single attorney to represent them all, the employees may be separated into as many compatible groups as is necessary to resolve the conflict problem and each group may be provided with separate representation. Circumstances may make it advisable that private representation be provided to all conflicting groups and that direct Justice Department representation be withheld so as not to prejudice particular defendants. In such situations, the procedures of § 50.16 will apply.

(11) Whenever the Solicitor General declines to authorize further appellate review or the Department attorney assigned to represent an employee becomes aware that the representation of the employee could involve the assertion of a position that conflicts with the interests of the United States, the attorney shall fully advise the employee of the decision not to appeal or the nature, extent, and potential consequences of the conflict. The attorney shall also determine, after consultation with his supervisor (and, if appropriate, with the litigating division) whether the assertion of the position or appellate review is necessary to the adequate representation of the employee and

(i) If it is determined that the assertion of the position or appeal is not necessary to the adequate representation of the employee, and if the employee knowingly agrees to forego appeal or to waive the assertion of that position, governmental representation may be provided or continued; or

(ii) If the employee does not consent to forego appeal or waive the assertion of the position, or if it is determined that an appeal or assertion of the position is necessary to the adequate representation of the employee, a Justice Department lawyer may not provide or continue to provide the representation; and

(iii) In appropriate cases arising under paragraph (a)(10)(ii) of this section, a private attorney may be provided at federal expense under the procedures of § 50.16.

(12) Once undertaken, representation of a federal employee under this subsection will continue until either all appropriate proceedings, including applicable appellate procedures approved by the Solicitor General, have ended, or until any of the bases for declining or withdrawing from representation set forth in this section is found to exist, including without limitation the basis that representation is not in the interest of the United States. If representation is discontinued for any reason, the representing Department attorney on the case will seek to withdraw but will take all reasonable steps to avoid prejudice to the employee.

(b) Representation is not available to a federal employee whenever:

(1) The conduct with regard to which the employee desires representation does not reasonably appear to have been performed within the scope of his

68

**Department of Justice**

§ 50.16

employment with the federal government;

(2) It is otherwise determined by the Department that it is not in the interest of the United States to provide representation to the employee.

(c)(1) The Department of Justice may indemnify the defendant Department of Justice employee for any verdict, judgment, or other monetary award which is rendered against such employee, provided that the conduct giving rise to the verdict, judgment, or award was taken within the scope of employment and that such indemnification is in the interest of the United States, as determined by the Attorney General or his designee.

(2) The Department of Justice may settle or compromise a personal damages claim against a Department of Justice employee by the payment of available funds, at any time, provided the alleged conduct giving rise to the personal damages claim was taken within the scope of employment and that such settlement or compromise is in the interest of the United States, as determined by the Attorney General or his designee.

(3) Absent exceptional circumstances as determined by the Attorney General or his designee, the Department will not entertain a request either to agree to indemnify or to settle a personal damages claim before entry of an adverse verdict, judgment, or award.

(4) The Department of Justice employee may request indemnification to satisfy a verdict, judgment, or award entered against the employee. The employee shall submit a written request, with appropriate documentation including copies of the verdict, judgment, award, or settlement proposal if on appeal, to the head of his employing component, who shall thereupon submit to the appropriate Assistant Attorney General, in a timely manner, a recommended disposition of the request. Where appropriate, the Assistant Attorney General shall seek the views of the U.S. Attorney; in all such cases the Civil Division shall be consulted. The Assistant Attorney General shall forward the request, the employing component's recommendation, and the Assistant Attorney General's rec-

ommendation to the Attorney General for decision.

(5) Any payment under this section either to indemnify a Department of Justice employee or to settle a personal damages claim shall be contingent upon the availability of appropriated funds of the employing component of the Department of Justice.

[Order No. 970–82, 47 FR 8172, Feb. 25, 1982, as amended at Order No. 1139–86, 51 FR 27022, July 29, 1986; Order No. 1409–90, 55 FR 13130, Apr. 9, 1990]

**§ 50.16  Representation of Federal employees by private counsel at Federal expense.**

(a) Representation by private counsel at federal expense or reimbursement of private counsel fees is subject to the availability of funds and may be provided to a federal employee only in the instances described in § 50.15(a) (4), (7), (10), and (11), and in appropriate circumstances, for the purposes set forth in § 50.15(a)(2).

(b) To ensure uniformity in retention and reimbursement procedures among the litigating divisions, the Civil Division shall be responsible for establishing procedures for the retention of private counsel and the reimbursement to an employee of private counsel fees, including the setting of fee schedules. In all instances where a litigating division decides to retain private counsel or to provide reimbursement of private counsel fees under this section, the Civil Division shall be consulted before the retention or reimbursement is undertaken.

(c) Where private counsel is provided, the following procedures shall apply:

(1) While the Department of Justice will generally defer to the employee's choice of counsel, the Department must approve in advance any private counsel to be retained under this section. Where national security interests may be involved, the Department of Justice will consult with the agency employing the federal defendant seeking representation.

(2) Federal payments to private counsel for an employee will cease if the private counsel violates any of the terms of the retention agreement or the Department of Justice.

69

Attachment " _β_ "

102 Wn. App. 687. BECKMAN v. DSHS

[No. 25982-6-II. Division Two. August 21, 2000.]

DAMON R. BECKMAN, ET AL., Respondents, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL., Appellants.

ON MOTION To EXTEND TIME To FILE NOTICE OF APPEAL AND MOTION To DISMISS APPEAL.

688   BECKMAN v. DSHS   Aug. 2000
102 Wn. App. 687

Aug. 2000   BECKMAN v. DSHS   689
102 Wn. App. 687

Christine O. Gregoire, Attorney General, and Loretta M. Lamb and Michael E. Tardif, Assistants; Howard M. Goodfriend (of Edwards, Sieh, Smith & Goodfriend, P.S.); and Troy Nelson and Andrew Nelson, for appellants.

Charles K. Wiggins and Kenneth W. Masters (of Wiggins Law Offices, P.L.L.C.); and Stephanie B. Bloomfield, David P. Moody, and J. Richard Creatura (of Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim), for respondents.

Steven B. Frank (of Frank & Rosen), for other party.

Karl B. Tegland, amicus curiae.

690   BECKMAN v. DSHS   Aug. 2000
102 Wn. App. 687

ARMSTRONG, C.J., and BRIDGEWATER and HUNT, JJ.-

BACKGROUND

Damon Beckman, William Coalter, and Eric Busch (Plaintiffs) are developmentally disabled adults who claim they suffered injuries while living in a state-licensed adult care facility. They sued the State of Washington, Department of Social and Health Services, its caseworker-employees, and the operator of the facility. On March 23, 2000, a jury awarded them $17.76 million in damages, including substantial punitive damages.

Sometime before April 4, 2000, Plaintiffs' counsel spoke to the trial judge's assistant to schedule a time for presentation of the judgment documents for each Plaintiff. The hearing was scheduled for April 14, 2000.

On April 4, 2000, Plaintiffs' counsel sent a confirming letter to the trial court judge with a copy to "Opposing Counsel." At the same time, Plaintiffs' counsel prepared a "Note for Motion Docket," with proposed judgment attached for each Plaintiffs case and with each addressed to "Janet L. Capps, Loretta M. Lamb" at the Attorney General's Office in Seattle. See CR 54(f). All of these documents were sent by courier to the Attorney

General's Office and all bear a "Received" filing stamp of April 4, 2000, from the Attorney General's Office.

No one from the Attorney General's Office appeared at the April 14 hearing. The trial court entered the judgments, and they were filed on the same day. However, neither the court nor Plaintiffs' counsel sent conformed copies of the final judgment documents to the Attorney General's Office.

On May 24, Plaintiffs' counsel wrote the Attorney General's Office, asking that the State pay the judgments. The

Aug. 2000     BECKMAN v. DSHS     691
102 Wn. App. 687

next day, 10 days late, the State filed a Notice of Appeal. At the same time, the State moved to allow the late filing; Plaintiffs responded with a motion to dismiss the appeal.

The State contends CR 5(a) and RAP 18.8 allow such a late filing under the circumstances presented here. They do not.

DISCUSSION

I. CR 5(a)

CR 5(a) describes the documents that a party must serve:

[E]very order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties.

(Emphasis added.)

The State asks us to broadly construe the language of CR 5(a) and hold that the rule requires service of conformed copies of the final judgment on the non-prevailing party.«1» The State argues that because it was not served with conformed copies of the final judgment, its appeal is timely. However, the language of CR 5 and the related civil rules are plain. CR 5(a) does not require service of conformed copies of the final judgment.

Here, the terms "pleading" and "similar paper" do not include final judgments. A final judgment is not a "pleading" requiring service under CR 5(a). CR 7(a) defines

---

«1» We construe court rules in accord with their purpose "as though they were drafted by the Legislature." Nevers v. Fireside, Inc., 133 Wn.2d 804, 809, 947 P.2d 721 (1997) (citation omitted). And we interpret court rules by reference to rules of statutory construction. State v. Greenwood, 120 Wn.2d 585, 592, 845 P.2d 971 (1993) (citation omitted); Heaney v. Seattle Mun. Court, 35 Wn. App. 150, 154, 665 P.2d 918 (1983), review denied, 101 Wn.2d 1004 (1984) (citing 3 C. SANDS, STATUTORY CONSTRUCTION § 67.10 (4th ed. 1974)).

"pleadings," and that definition does not include judgments. See also Tiffin v. Hendricks, 44 Wn.2d 837, 843, 271 P.2d 683 (1954).«2» Rather, the civil rules treat judgments differently than pleadings. Compare CR 7-16 (pleadings or motions), with CR 54-63 (judgments).

A final judgment is not a "similar paper." Even assuming ambiguity in CR 5(a), the rule of statutory construction ejusdem generis dictates this conclusion. That rule provides that general terms, when used in conjunction with specific terms, should be deemed to incorporate only those things similar in nature or "comparable to" the specific terms. John H. Sellen Constr. Co. v. Department of Revenue, 87 Wn.2d 878, 883-84, 558 P.2d 1342 (1976); Davis v. State ex rel. Dep't of Licensing, 137 Wn.2d 957, 970, 977 P.2d 554 (1999); Port of Seattle v. Department of Revenue, 101 Wn. App. 106, 113, 1 P.3d 607 (2000). In CR 5(a), the generic phrase "similar paper" must be read in conjunction with the terms "every written notice, appearance, demand, offer of judgment, designation of record on appeal." Only those "papers" that are "comparable to" written notice, appearance, demand, offer of judgment, or designation of record on appeal fall within the category of "similar paper." The specifically listed "papers" in CR 5(a) are documents prepared by a party that generally state a party's claim or allegation. On the other hand, a final judgment, although it may be drafted by a party, is the formal record of a jury's verdict or judge's decision. A judgment does not state a party's claim or allegation. It is not, therefore, a "similar paper" as that phrase is used in CR 5(a).«3»

This reading of CR 5(a) is strengthened by reference

---

«2» The term 'pleadings' has a technical and well-defined meaning. Pleadings are written allegations of what is affirmed on one side, or denied on the other, disclosing to the court or jury having to try the cause the real matter in dispute between the parties." Tiffin, 44 Wn.2d at 843 (quoting BLACK'S LAW DICTIONARY 1312 (4th ed.)).

«3» The civil rules do provide for notice of the proposed findings, which are generated by the prevailing party. Notice of presentation of findings of fact and conclusions of law, including copies of the proposed findings and conclusions, must be served on the opposing party five days before their presentation to the court. CR 54(f). Plaintiffs' counsel provided such notice here.

to the rules regarding actual filing of the judgment. RAP 5.2(a) requires that notice of appeal be filed within 30 days of entry of the judgment in the trial court. CR 58 states that a judgment is "entered" when it is delivered to the clerk for filing. See Malott v. Randall, 83 Wn.2d 259, 517 P.2d 605 (1974). Requiring service of the judgment before the start of the running of the 30-day appeal period would effectively amend CR 58 and RAP 5.2(a) to require both the filing of the judgment with the clerk and service of conformed copies of the judgment before the 30 days begin to run. This is not what the rules say, nor what the rules contemplate.

Finally, CR 54(f) provides in part: "No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment. ..." Thus, the rule specific to judgments requires only that the proposed judgment, not a conformed copy of the entered judgment, be served on opposing counsel.

The plain meaning of CR 5(a) is clear; its terms do not require service of conformed copies of the final entered judgment on the non-prevailing party. CR 5(a) does not afford the State the relief it seeks.

II. RAP 18.8

In contrast to the liberal application we generally give the Rules of Appellate Procedure (RAP), RAP 18.8 expressly requires a narrow application:

The appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal. . . . The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section. . . .

(Emphasis added.)

The phrase "extraordinary circumstances" was defined in Reichelt v. Raymark Indus., Inc., 52 Wn. App. 763, 765, 764 P.2d 653 (1988). There, the Court of Appeals refused to extend the time for filing a notice of appeal that

694   BECKMAN v. DSHS   Aug. 2000
102 Wn. App. 687

was filed, as here, 10 days late. The appellant argued that "extraordinary circumstances" existed because one of the two trial attorneys left the firm during the 30 days following entry of judgment, and the firm's appellate attorney had an unusually heavy work load. The court rejected the argument and summarized the cases allowing late filings:

In each case, the defective filings were upheld due to "extraordinary circumstances," i.e., circumstances wherein the filing, despite reasonable diligence, was defective due to excusable error or circumstances beyond the party's control. In such a case, the lost opportunity to appeal would constitute a gross miscarriage of justice because of the appellant's reasonably diligent conduct. RAP 18.8(b).

Reichelt, 52 Wn. App. at 765-66; see also Shumway v. Payne, 136 Wn.2d 383, 394-97, 964 P.2d 349 (1998) (reiterating and reemphasizing stringent standard of RAP 18.8(b) noted in Reichelt); Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wn.2d 366, 849 P.2d 1225 (1993);«4» Pybas v. Paolino, 73 Wn. App. 393, 401, 869 P.2d 427 (1994).«5» The court found the lack of prejudice to the respondent irrelevant and noted that the prejudice of granting an extension of time would be "to the appellate system and to litigants generally, who are entitled to an end to their day in court." Reichelt, 52 Wn. App. at 766 n.2.

---

«4» In Schaefco, 121 Wn.2d at 368, the court said:

Schaefco has not provided sufficient excuse for its failure to file a timely notice of appeal, nor has it demonstrated sound reasons to abandon the preference for finality.

We recognize that Schaefco raises many important issues.... However, it would be improper to consider these questions given the procedural failures of this case. See RAP 18.8(b); RAP 18.9(b). . . . Schaefco's appeal is dismissed.

«5» In Pybas the court stated:

RAP 18.8(b), by limiting the extension of time to file a notice of appeal to those cases involving "extraordinary circumstances and to prevent a gross miscarriage of justice," expresses a public policy preference for the finality of judicial decisions over the competing policy of reaching the merits in every case.

See also State v. One 1977 Blue Ford Pick-Up Truck, 447 A.2d 1226 (Me. 1982) (State's negligent office procedures, which resulted in late filing of appeal of adverse civil judgment, were insufficient grounds upon which to allow a late filing).

---

Aug. 2000    BECKMAN v. DSHS    695
102 Wn. App. 687

The State first contends "extraordinary circumstances" are present here because Plaintiffs' counsel failed to give it notice that the judgments had been entered. However, as noted above, Plaintiffs' counsel gave the State notice of presentation of the proposed judgments. See CR 52(c). This was all Plaintiffs' counsel was required to do; the State was then obligated to monitor the actual entry of the judgments. Plaintiffs' counsel was not legally obligated to bring the State's mistake, if any, to the State's attention. Thus, Plaintiffs' failure to give the State notice beyond that required by CR 52(c) does not demonstrate "extraordinary circumstances."

The State next contends that Janet Capps' intentional failure to protect the State's interests amounts to "extraordinary circumstances." However, in her declaration, Capps states that she has "no recollection" of the notice documents and asserts that she did not "knowingly, intentionally or recklessly fail to act" on the same. Further, there is no reasonable inference from the evidence before this court that Capps acted "intentionally" by ignoring the notice documents or failing to bring them to the attention of others. Rather, at best, the evidence was that Capps was not "reasonably diligent" in ensuring that the documents were timely routed to the responsible attorneys in the Attorney General's Office. Negligence, or the lack of "reasonable diligence," does not amount to "extraordinary circumstances." Shumway, 136 Wn.2d 383; Reichelt, 52 Wn. App. 763; One 1977 Blue Ford Pick-Up Truck, 447 A.2d 1226. Thus, Capps' conduct does not demonstrate "extraordinary circumstances."

But even if Capps intentionally failed to respond to the April 14 notice, this would not constitute "extraordinary circumstances." Capps' conduct impaired the State's timely filing of an appeal only because the Attorney General's Office lacked any reasonable procedure for calendaring hearings. The State's own internal investigation, which it asked us to consider, details the problems: The attorneys individually managed and calendared their own cases; the

---

696    BECKMAN v. DSHS    Aug. 2000
102 Wn. App. 687

office had no central system for calendaring hearings;«6» the staff was inexperienced and lacked training; there was no coordination between the responsible attorneys and no

system for "catching" administrative errors such as the one here. As noted in One 1977 Blue Ford Pick-Up Truck:

We find nothing in the nature of an event or circumstance so extraordinary in this case as to excuse the neglect of appellant's counsel to provide suitable office procedures to cause the judgment to be brought to counsel's attention once it was delivered into the custody and control of counsel's office. It is incumbent upon any attorney to institute internal office procedures sufficient to assure that judgments are properly dealt with once they are delivered into the custody of office personnel subject to the control of counsel. The failure to take necessary steps, to that end, even during periods of unusual circumstances in an attorney's office, is not an acceptable excuse for any resulting failure to obtain personal knowledge of the entry of judgment on the part of counsel. . . .

447 A.2d at 1231. This language aptly describes the problem here. The Attorney General's office lacked office management procedures that could have prevented what occurred here.

The State was not "reasonably diligent" in attempting to file a timely appeal. Reichelt, 52 Wn. App. at 765-66. It fails to demonstrate "extraordinary circumstances" and "a gross miscarriage of justice" that would allow this court to overlook the late filing. RAP 18.8. Therefore, "the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time." The State's motion to extend time to file its notice of appeal is DENIED, and Respondents' motion to dismiss the appeal is GRANTED.

§ 50.15 **Representation of Federal officials and employees by Department of Justice attorneys or by private counsel furnished by the Department in civil, criminal, and congressional proceedings in which Federal employees are sued, subpoenaed, or charged in their individual capacities.**

(a) Under the procedures set forth below, a federal employee (hereby defined to include present and former Federal officials and employees) may be provided representation in civil, criminal and Congressional proceedings in which he is sued, subpoenaed, or charged in his individual capacity, not covered by § 15.1 of this chapter, when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States. No special form of request for representation is required when it is clear from the proceedings in a case that the employee is being sued solely in his official capacity and only equitable relief is sought. (See USAM 4-13.000)

(1) When an employee believes he is entitled to representation by the Department of Justice in a proceeding, he must submit forthwith a written request for that representation, together with all process and pleadings served upon him, to his immediate supervisor or whomever is designated by the head of his department or agency. Unless the employee's employing federal agency concludes that representation is clearly unwarranted, it shall submit in a timely manner, to the Civil Division or other appropriate litigating division (Antitrust, Civil Rights, Criminal, Land and Natural Resources or the Tax Division), a statement containing its findings as to whether the employee was acting within the scope of his employment and its recommendation for or against providing representation. The statement should be accompanied by all available factual information. In emergency situations the litigating division may initiate conditional representation after a telephone request from the appropriate official of the employing agency. In such cases, the writ-

ten request and appropriate documentation must be subsequently provided.

(2) Upon receipt of the individual's request for counsel, the litigating division shall determine whether the employee's actions reasonably appear to have been performed within the scope of his employment and whether providing representation would be in the interest of the United States. In circumstances where considerations of professional ethics prohibit direct review of the facts by attorneys of the litigating division (e.g. because of the possible existence of inter-defendant conflicts) the litigating division may delegate the fact-finding aspects of this function to other components of the Department or to a private attorney at federal expenses.

(3) Attorneys employed by any component of the Department of Justice who participate in any process utilized for the purpose of determining whether the Department should provide representation to a federal employee, undertake a full and traditional attorney-client relationship with the employee with respect to application of the attorney-client privilege. If representation is authorized, Justice Department attorneys who represent an employee under this section also undertake a full and traditional attorney-client relationship with the employee with respect to the attorney-client privilege. Any adverse information communicated by the client-employee to an attorney during the course of such attorney-client relationship shall not be disclosed to anyone, either inside or outside the Department, other than attorneys responsible for representation of the employee, unless such disclosure is authorized by the employee. Such adverse information shall continue to be fully protected whether or not representation is provided, and even though representation may be denied or discontinued. The extent, if any, to which attorneys employed by an agency other than the Department of Justice undertake a full and traditional attorney-client relationship with the employee with respect to the attorney-client privilege, either for purposes of determining whether representation should be provided or to assist Justice